Thank you, I'll try to save a couple of minutes for rebuttal. This case is about reasonable suspicion to stop a car. And specifically, is there reasonable suspicion to stop a car based on two extremely general factors, color of car and more or less number of people involved, when the car found does not meet either one of those specific factors, the color is a little bit different, the number of people is a little bit different. Our position is that there's not reasonable suspicion. The only thing that makes it close is the nature of the area, the size of the town. But there wasn't evidence of the type of traffic in that sunny side at the time of the stop, during the hearing or in any of the materials presented to the court. The court instead relied on the judge's individual experience in traveling through that town in determining that there wouldn't be much traffic at that time. But the time, correct me, what was the time? It was around 1 o'clock in the morning. But we know that this is a business district. We submitted pictures to the court of the market where the individuals had just left from. That market was open. There was a number of houses in the area. How big is the town? The town, I believe, is Sunnyside. The judge made some findings on that. He took judicial notice. I think there's 14,000 people or so in the town. I think it was 15,000. Yes. But Sunnyside, in my experience, is an active town at night, unfortunately. There's a large amount of crime that goes on. There's a lot of things happening at night. But certainly this is not an extremely rural area, very specific to where the cars were. If you look at the map, you can see there were a lot of homes in the area, a number of businesses. It's very different from the circumstances described in the Berber de Teninco case, where there were some facts in that case that the judge was found to have impermissibly found and other facts that could be inferred from the record. And the court inferred that there wouldn't be much traffic on the road from the fact that this was extremely rural, no businesses in the area, few houses. There was only a fire station next door. Those aren't the facts here. Instead, this case is closer to Mariscal, where the court was held to not be able to infer that at 10 p.m. in Phoenix, a major metropolitan area, there would be a lot of traffic on the road. It seems to me a lot more plausible that there would be a lot of traffic on the road in Phoenix, Arizona, at 10 p.m., that there would be so few cars on the road in Sunnyside at 1 a.m. in the center of town that you could stop a car based on two general factors that don't even specifically match. Even the route of traffic didn't match. If you look at the map, the suspect car was going somewhat northeast in one direction, and the defendant's car was found coming from the south, having stopped at a market. So in order for the suspect vehicle to be the defendant's vehicle, that car would have had to change routes, loop around, and instead of going on the highway, which if a car is involved in a crime, you would think that they would go towards the highway, which is to the south of where the defendant's vehicle was coming from. The defendant's vehicle was heading north. If they would have headed south, you'd think they'd get on the highway, but instead head south and then come back up north and stop at a mini market. That doesn't seem a plausible line of travel. There was about seven minutes that passed from when the call was made to dispatch to look for a car and when the defendant's vehicle was actually found. We're only talking about a couple of miles, very close to a highway. So if you look at the amount of time that could pass, the suspect vehicle clearly could have been far away by the time that seven minutes passed. So the route of travel doesn't suggest that it's the right car. The two individual descriptors that were given don't match at least exactly and aren't particularly helpful. How close are the descriptors? Is it like gray versus silver? Gray versus silver. And I thought it was interesting that given the time of night, most cars looked the same. At one point, one of the officers was behind the victim's vehicle and thought that was a gray car. So gray versus silver versus blue versus black at that time of night is not particularly helpful. What do we call the sky out there in Seattle, the silver sky? And I might call it white myself. I call it the silver sky, but I'm not sure others might think it's cloudy. It's a matter of perspective. If you look at the Lefebvre treatise that I cited, I think that's the most thorough place to look at it, the type of factors to weigh in determining whether or not a description is true. That's not legal authority. No, but it compiles a bunch of cases. And certainly the cases out of this circuit, there's a few that discuss one point or another point. But Lefebvre gathers them together and distills six factors that the court should look at in determining whether or not a description is specific enough to give reasonable suspicion. And the test is whether or not there's enough facts so that there's not a risk of a general sort of drag and that approach of stopping a number of innocent cars. I have a question for you, if I may interject. Yes. Is the standard for reasonable suspicion to stop the car, is it pretty much the same that we look at when there's a Terry stop? Yes. It is, okay. Now, the caller who called 911, she said that people in the car had guns? Correct. And so there is an interest to protect the public, right? Sure. So how much suspicion is reasonable in that context? Well, that goes to whether or not a crime has occurred and what kind of force might be appropriate in the stop. But I don't know that that goes into weighing whether or not you've got the right car, the seriousness of the offense. It certainly calls for what there should have been in this case is some police corroboration. There was no following of the vehicle to determine whether or not, given the reaction of the vehicle to being close to a police officer, it might be the right car, and that's one of the factors that LaFave points to. And I think perhaps more importantly, there was a back and forth between dispatch and the victim. What the officer who saw the car could have done is say, hey, I've got this silver car with four people involved, I think it was a Honda, does that sound like the right car? Ask the victim. You mean the person who called? The caller. The caller. Yes, they could have checked in with her and gotten more information. Which they did later and found out that. It was the wrong car. Yeah. And what I'm saying is they could have done that before the stop, because there isn't a rule, certainly not in a display of firearms case, maybe it would be in a terrorism case or something of great, great magnitude, but there isn't a rule that because guns are involved, you can stop any car. There has to be a limiting factor. So what is that limiting factor? So what I wasn't clear from the record was how quickly they made contact with her and how quickly, if there is any evidence bearing on this, how quickly they could have made contact with her. I think they were in telephone contact, so clearly dispatch could have called her back and asked her questions. They had a number to call her back. That's my read of the record. Again, there was no testimony, but given that there were phone calls going back and forth, my inference from the record is that they could have called her back and I think the court can take judicial notice of the way that 911 works is the phone number shows up for security purposes. 911 generally is able to call back when a victim calls. Did you want to save two minutes? Yes, I did. Thank you, Your Honor. Okay, Mr. Hallon. Thank you, Your Honor. Your Honor, the constitutional principles at play here are well established. The court had asked about reasonable suspicion. Officers may stop a vehicle if they have reasonable suspicion that criminal activity is afoot. However, that suspicion must be based upon specific and articulable facts in conjunction with reasonable inferences from those facts. In this particular case, Officer Hernandez was aware of the following facts. One, that the reporting party, shortly before 1 o'clock in the morning, had advised that gang members had been flashing signs at her and pointed a gun at her. They were aware that she was driving into the city of Sunnyside. The officers were dispatched, called out to the area. After dispatch was initially contacted, the reporting party continued to feed information to law enforcement officers, and that's noted in the record by Officer Rivas that he made contact with the reporting party at 1254 a.m., and that's excerpt of Record 25. She advised that the vehicle had then made a left on Columbia, which heads into the city of Sunnyside. Here, the defendant has provided a map of the area, which is excerpt of Record 28. Snipes Canal Road is a north-south road. This vehicle could have gone east or west. If it headed west, it was going up to the hills, which Ms. Pinnell cites in her brief as the officers believed the car may have gone up to the hill, or the car could have headed east, and that would go towards city center. In this particular case, Officer Rivas documented that the reporting party told him this vehicle was heading towards city center. So that's exactly where the police went to look to try to find the suspect vehicle. They were aware that the car was gray. They knew there were multiple occupants in the car, and they knew that it was somewhere inside of city center. Officer Hernandez observed the vehicle within a few minutes at a market. This is in proximity to the area of where the reporting party had advised she last saw the car. He then stopped the car, based upon reasonable suspicion, and was able to determine whether or not these people were involved in a crime. This court in Galegos, cited in my brief, acknowledges that Terry accepts the risk that innocent people may be inconvenienced. In that particular case, this court determined that innocent people may be inconvenienced for up to an hour. The issue is not that. The issue is whether there was reasonable suspicion to stop this car. And there are lots of gray and silver cars. The complainant had said four people, albeit with a little bit of uncertainty. There were only three, and initially maybe the arresting officer may have seen only one. But in any event, there were only three. The car was not the same make that she later said the car was. So basically you have someone in a gray car at 1 a.m., and the car is stopped. Didn't the judge really rely heavily on his own personal view of what goes on at that part of Sunnyside at 1 a.m.? I would submit that the judge did not. The judge initially made some observations and advised the parties that he was familiar with the city of Sunnyside, that he had been in Sunnyside at 1 a.m., presumably for some duck hunting trip. Well, he says this, quote, Sunnyside is not New York. I mean you have 400 gray cars at 1 a.m. as people come out of the bars, but in Sunnyside there's virtually nothing going on at 1 a.m. So I put aside the fact that, of course, at 1 a.m. the people are not coming out of the bars in New York. They don't come out until at least 4 a.m., but in all seriousness, what was important to him is that there was nothing going on at 1 o'clock in the morning. Your adversary says there's evidence of record that there was an open market, and there were things going on in that particular part of Sunnyside. So isn't he sort of substituting his personal knowledge for the facts of record? Your Honor, I don't believe that he is substituting his personal knowledge. I think it would be undisputed that Sunnyside is quite different than New York. I mean with a population of under 16,000, those two can't be compared. And I think that the evidence that he looked to- There are parts of Brooklyn that would qualify. I think that the evidence that he was looking to, which is in the record in regards to what was going on, was there other traffic in the area, were there other vehicles on the road, that was provided to him in the form of argument from counsel in addition to the police reports, which were all a part of the record. In excerpt of record page 11, that is Officer Hernandez's report, where he talks about that this is the only silver car that he saw in the area. Defense counsel initially in this case had submitted a motion to suppress, which is ECF 32, and I do have hard copies if the court would like copies of those. But on page 7, he talks about that this is the fact that the silver Honda Accord was the only silver car in the area. So the record that was established before the court was, this was the only car that was observed by law enforcement in this particular area. So I don't think the court was drawing on his personal experience, rather the court was drawing on the facts, which the party stipulated to at the onset of this hearing when the parties agreed that there were no facts in dispute in this particular case. Outside of that, Your Honor, I don't have anything else for the court unless the court has questions for me. The Marisol case also involved criticism of a court for taking judicial notice of traffic conditions. Your response to that is that this wasn't based on judicial notice? That's correct, Your Honor. I believe that Marisol, that's a distinguishable. In that particular case, the court had observed that there was a gap in the testimony regarding this traffic stop, and the court observed that the district court had attempted to fill that gap with his own personal information about his knowledge of traffic at this particular intersection, and the court determined that the district court couldn't come in with his own personal knowledge at this particular moment in time and say this is what the traffic pattern was like. In this particular case, in the instant case, the facts that were provided to the district court were undisputed. They were provided to the court in briefs and in law enforcement reports that there was no other traffic in the road and that this was the only silver car observed by law enforcement. With respect to Judge Gould's question, is there authority that the severity of the alleged crime is another factor that a policeman can take into account or not? In other words, if the complainant in a hypothetical says, I've just seen three men shot dead and all I know is it was a passenger car, could that, under those circumstances, be a basis for stopping lots of passenger cars in a way that you couldn't if the complainant said, well, I've just seen a person doing something suspicious, I can't quite figure out what, and he's in a passenger car? Well, Your Honor, I believe that public safety is one of the factors to consider under the totality of the circumstances. In my brief, I cited United States v. Hartsford, which was authored by Judge Gould, and in that case they talk about the Hensley decision, which was, as the court is familiar, was a wanted person flyer, and law enforcement had been looking for someone who was involved in a bank robbery, and in that particular case the Supreme Court had talked about public safety, and that was one of the basis under the totality of the circumstances for the traffic stop. So I do think it is something that can be considered. Thank you. Thank you, counsel. Okay, Ms. Pinnell. Thank you, Your Honor. A couple of factual points. Judge Rakoff had asked about the time that it passed. Let me move this down a little bit. Looking at the judge's order, the defendant's vehicle was seen at 12.55, and then the victim's information was relayed through dispatch at 1.03. So she was contacted sometime before then. It was at most eight minutes, but I do think there was telephonability of telephone contact between those two periods of time. Judge Schroeder talked about a business being open, but the facts also indicate not only was a business open, but during the investigation of whether or not the individuals in the silver car were the ones who had pointed the gun, they also turned up a Taco Bell receipt to show that the individuals had just been at a nearby Taco Bell. So we know at least two things from the record. There's an open Taco Bell and there's an open Mini Mart, and, again, there's lots of houses in the area. So the question becomes, can you just stop any car in the area, you know, maybe not a truck, but any car in the area, because there is an allegation of a gun being waved around. It could be that there is a crime so serious that you could stop any car in the area. It certainly is a serious crime that someone's waving a gun around, but there weren't shots fired. I don't think it rises to that level of stopping every single car in the area. So how much information do you need to make sure that you're not just stopping innocent people, but that the police are also protecting the community? That's where I believe corroboration comes in, in the form of either watching the vehicle, seeing if there's any indication that it might be the right car, and or contacting the complaining witness, the victim in this case, to see if the descriptor is good. Otherwise, you have a standard where just any car can be pulled over. And, again, the facts in the record simply don't show that there were no other cars in the area. That wasn't something defense stipulated to. Defense said that the court could rely on the written record and the police reports, but never stipulated as to any specific facts. Thank you. Thank you for your argument. It's very nicely argued by both sides, and it's an interesting case, so we thank you. United States v. Mancilla shall be submitted.
judges: Rakoff, Schroeder, Gould